UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSHUA ROGAL,

                    Plaintiff,

          v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                    Defendant.

Case No. C12-5158-RSL-BAT

**REPORT AND
RECOMMENDATION**

Joshua G. Rogal seeks review of the denial of his Disability Insurance Benefits application.  He contends that the ALJ erred by (1) failing to consider limitations caused by all of his impairments; (2) improperly evaluating the medical evidence, Mr. Rogal's testimony, and the lay evidence; (3) improperly assessing Mr. Rogal's residual functional capacity; and (4) finding Mr. Rogal not disabled based on the erroneous RFC assessment.  Mr. Rogal further asserts that (5) the new evidence he submitted to the Appeals Council shows that the ALJ's decision was not supported by substantial evidence and/or was based on legal error.  Dkt. 14 at 2.  As discussed below, the Court recommends that the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED** with prejudice.

## I.      FACTUAL AND PROCEDURAL HISTORY

Joshua Rogal is currently 29 years old, has completed the 12th grade, and has worked as

a cashier, administrative assistant, teacher aide, home attendant and film tape librarian.[1]  On July 22, 2008, he applied for benefits, alleging disability as of May 15, 2008.  Tr. 137-38.  His application was denied initially and on reconsideration.  Tr. 87-89, 91-92.  The ALJ conducted a hearing on July 15, 2010, and on September 24, 2010, issued a decision finding Mr. Rogal not disabled.  Tr. 39-82.  As the Appeals Council denied Mr. Rogal's request for review, the ALJ's decision is the Commissioner's final decision.  Tr. 1-7.

## II.   THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one:**  Mr. Rogal had not engaged in substantial gainful activity since May 15, 2008.

**Step two:**  Mr. Rogal had the following severe impairments: degenerative disc disease of the lumbar spine with lumbar spondylosis, chronic fatigue, and cognitive disorder.

**Step three:**  These impairments did not meet or equal the requirements of a listed impairment.[3]

**Residual Functional Capacity:**  Mr. Rogal had the residual functional capacity to perform light work in that he was able to lift and carry 20 pounds occasionally and 10 pounds frequently, to sit for 6 hours in an 8-hour workday, and to stand and/or walk for 6 hours in an 8-hour workday, with no limitations with regard to pushing or pulling the above amounts.  Mr. Rogal was occasionally able to climb ramps and stairs, but never ladders, ropes, or scaffolds, and occasionally to balance, stoop, kneel, crouch, and crawl.  He was able to perform simple and some complex work.  He must avoid hazards.

**Step four:**  Mr. Rogal could perform his past work as a cashier, teacher aide, and film tape librarian and was thus not disabled.  In the alternative, considering Mr. Rogal's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the economy that Mr. Rogal also can perform.  He is thus also not disabled under the step-five framework.

Tr. 14-31.

---

[1] Tr. 77, 137, 168, 186.
[2] 20 C.F.R. § 404.1520.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

# III.    DISCUSSION

## A.    Step two

Mr. Rogal asserts that the ALJ's step two analysis was legally erroneous.  At step two, the claimant must show that (1) he has a medically determinable impairment or combination of impairments, and (2) the impairment or combination of impairments is severe.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); 20 C.F.R. § 404.1620(c).  An impairment is medically determinable if it results from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. § 404.1528.  An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c), 404.1521(a).  An impairment or combination of impairments is "not severe" if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

After determining that Mr. Rogal's degenerative disc disease, chronic fatigue, and cognitive disorder were severe impairments, the ALJ noted that Mr. Rogal also based his claim of disability in part on poor dexterity in his hands, migraine headaches, depression, and Addison's disease.  The ALJ concluded, however, that none of these impairments, alone or in combination with Mr. Rogal's other impairments, was severe under the Social Security regulations.  Specifically, the ALJ found that a comprehensive workup in 2007 regarding Mr. Rogal's hand complaints was "all negative," with no etiology for his complaints established.  The ALJ concluded that Mr. Rogal had no medically determinable left upper extremity impairment.  The ALJ also found that the evidence failed to establish a definitive diagnosis of Addison's disease, as treating doctor William Minteer, D.O., reported in June 2009 that he did

not find any documentation to support the diagnosis in Mr. Rogal's medical records.  The ALJ

found that even if Addison's disease was medically determinable, there was insufficient evidence

of any functional limitations resulting from that condition.  The ALJ concluded that Addison's

disease was not a severe impairment.[4]  Tr. 20.

Mr. Rogal asserts that the ALJ's finding that his poor hand dexterity, migraine headaches,

depression and Addison's disease were non-severe in combination with his other impairments

was factually and legally incorrect because "the ALJ already found that Rogal had severe

impairments," and, based on this finding, "the ALJ was required to consider at steps three, four,

and five all of the functional effects caused by all of Rogal's impairments."  Dkt. 14 at 4.

Essentially, Mr. Rogal argues that the ALJ was required to consider the effects of all of these

impairments at the later steps but did not.

Mr. Rogal is correct in asserting that an ALJ must consider the limitations imposed by all

of a claimant's impairments, even those that are not severe.  *See* 20 C.F.R. § 404.1545(a)(1).  But

the ALJ "must consider only limitations and restrictions attributable to medically determinable

impairments."  Social Security Ruling ("SSR") 96-8p.  Mr. Rogal does not present any argument

or authority to challenge the ALJ's finding that left upper extremity impairment and Addison's

disease were not medically determinable.  Similarly, Mr. Rogal does not present any argument or

authority to challenge the ALJ's finding that migraines and depression were not severe.  And,

---

[4] The ALJ also noted that Mr. Rogal complained of urological problems during the alleged disability period and the record shows that Mr. Rogal suffered a urethral stricture as a result of his 2002 motor vehicle accident.  The ALJ concluded that the objective medical evidence did not establish the existence of urethral stricture or any other urological impairment during the alleged disability period and found that Mr. Rogal did not have a severe urological impairment.  Tr. 20. Finally, the ALJ noted that Mr. Rogal sustained a left-field visual impairment in the 2002 accident, but the defect was not quantified and Mr. Rogal worked after the injury.  The ALJ therefore concluded that the left-field visual impairment was medically determinable but not severe.  Tr. 21.  Mr. Rogal presents no arguments related to the ALJ's assessment of these impairments at step two.  Accordingly, the Court does not address these findings.

REPORT AND RECOMMENDATION - 4

more importantly, he failed to identify what limitations resulting from these impairments the ALJ

failed to consider throughout the remaining steps of the disability evaluation process and how

consideration of any such limitations would have altered the ALJ's decision.

It is not enough merely to present an argument in the skimpiest way, and leave the Court

to do counsel's work—framing the argument and putting flesh on its bones through a discussion

of the applicable law and facts.  *See, e.g.*, *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir.

2005) (rejecting out of hand conclusory assertion that ALJ failed to consider whether claimant

met Listings because claimant provided no analysis of relevant law or facts regarding Listings);

*Perez v. Barnhart*, 415 F.3d 457, 462 n.4 (5th Cir. 2005) (argument waived by inadequate

briefing); *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (perfunctory complaint

fails to frame and develop issue sufficiently to invoke appellate review).  Mr. Rogal's conclusory

assertion that the ALJ erred by failing to consider limitations caused by these impairments is

insufficient to show error.  Mr. Rogal has not met his burden of proving error at step two.

## B.   Medical evidence

Mr. Rogal argues that the ALJ erroneously assessed the medical evidence from

examining psychologist David Dixon, Ph.D., and treating doctors Dennis Phillips, M.D., William

Minteer, D.O., and Pedro Postigo, M.D.  Dkt. 14 at 4-12.  In general, the ALJ should give more

weight to the opinion of a treating doctor than to that of a non-treating doctor, and more weight

to the opinion of an examining doctor than to that of a non-examining doctor.  *Lester v. Chater*,

81 F.3d 821, 830 (9th Cir. 1996).  Where it is not contradicted by another doctor, the ALJ may

reject a treating or examining doctor's opinion only for "clear and convincing reasons."  *Id.* at

830-31.  Where contradicted, the ALJ may not reject a treating or examining doctor's opinion

without "specific and legitimate reasons" that are supported by substantial evidence in the

1    record.  *Id.* at 830-31).  An ALJ does this by setting out a detailed and thorough summary of the

2    facts and conflicting evidence, stating her interpretation of the facts and evidence, and making

3    findings.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The ALJ must do more than

4    offer her conclusions; she must also explain why her interpretation, rather than the treating

5    doctor's interpretation, is correct.  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing

6    *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

7        *1.    Dr. Dixon*

8        Dr. Dixon evaluated Mr. Rogal in November 2008.  He performed a mental status exam,

9    finding Mr. Rogal had good functional social skills and was friendly and cooperative throughout

10   the examination; he had some latency in his responses to questions; his predominant mood was

11   depression, sadness, and frustration; his intellectual functioning was in the average range; and

12   there was no evidence of thought or perceptual disorder.  Dr. Dixon also performed memory

13   testing and found scores ranging from the 0.1 to the 10th percentile, placing Mr. Rogal in the

14   extremely low to low average range.  Dr. Dixon diagnosed cognitive disorder, NOS (memory 0.1

15   to 0.3%), dysthymic disorder, or rule out adult ADD/dyslexia, and assigned Mr. Rogal a global

16   assessment of functioning ("GAF") score of 50, indicating serious symptoms or a serious

17   impairment in social, occupational, or school functioning.  Am. Psychiatric Ass'n, Diagnostic

18   and Statistical Manual of Mental Disorders ("DSM-IV"), 34 (4th ed. text rev. 1994).  Dr. Dixon

19   opined Mr. Rogal was able to satisfactorily explain and justify his position; his ability to reason

20   and understand was good; his concentration was fair to poor but he persists; he interacts well

21   socially; and it appears he would adapt fairly well to new environmental conditions.  Tr. 470-76.

22       The ALJ included a detailed summary of Dr. Dixon's evaluation, but did not state what

23   weight she gave to his opinions.  Tr. 25.  Mr. Rogal characterizes this omission as a rejection of

REPORT AND RECOMMENDATION - 6

Dr. Dixon's opinion and states that this Court "must therefore credit as true" his opinions about Mr. Rogal's GAF score, ability to concentrate and maintain attention, and low memory scores. Dkt. 14 at 5.  The Commissioner asserts in response that although the ALJ did not expressly state the weight she gave to Dr. Dixon's opinion, her detailed accounting of the opinion and the fact that she assigned significant weight to a reviewing doctor who assessed the opinion shows that the ALJ considered the opinion and incorporated it into her residual functional capacity assessment.  Dkt. 15 at 6.

An ALJ must evaluate each medical opinion, decide what weight to give it, and give specific reasons for the weight given.  20 C.F.R. § 404.1527(d); SSR 96-2p.  Here, the ALJ did not state what weight she gave to Dr. Dixon's opinion or give specific reasons for the weight she gave it.  This was error.  However, an error may be harmless where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate decision.  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).  The Court concludes that the ALJ's error here was harmless.

As the Commissioner points out, the ALJ thoroughly discussed Dr. Dixon's opinion, showing that the ALJ considered the opinion even though she did not state what weight she gave it.  This is thus not a case were the ALJ simply ignored or neglected to mention a medical opinion.  Moreover, the ALJ gave significant weight to the opinion of the state agency medical consultant, Vincent Gollogly, Ph.D, who relied on Dr. Dixon's assessment in forming his opinion.  Tr. 27, 490-92.  Dr. Gollogly opined that Mr. Rogal was able to understand, remember and perform simple, repetitive tasks in a stable, routine environment; he could work cooperatively with a supervisor, coworkers, and the public; he interacts well socially; and he could travel, take precautions, and make a plan.  Tr. 492.  He concluded that Mr. Rogal's

allegations of disability due to mental impairment were partially credible but he retained the

capacity to perform full-time productive work without interruption from psychiatric symptoms.

*Id.*  This assessment is consistent with—and clearly based on—Dr. Dixon's opinion that Mr.

Rogal was able to reason and understand, had fair to poor concentration but was able to persist,

interacted well socially, and would adapt well to new environmental conditions.

The ALJ incorporated Dr. Gollogly's opinion into her residual functional capacity

assessment, finding that Mr. Rogal was limited to simple work, with the exception that Mr.

Rogal could perform some complex work, based on his own reports that he spends at least 1 hour

per day on the computer doing research, e-mail, games, bill-paying, and Facebook.  Tr. 26.

Although Mr. Rogal may disagree, this finding is a rational interpretation of Dr. Gollogly's

opinion.  Where there is more than one rational interpretation of the evidence, it is the ALJ's that

this Court must uphold.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  And although

Mr. Rogal asserts that the Court should "credit as true" Dr. Dixon's opinion, he does not explain

what additional functional limitations that opinion should have imposed.  Dkt. 14 at 5.

For all of these reasons, the Court concludes that the ALJ's error in failing to assign

weight to Dr. Dixon's opinion was harmless error and does not warrant reversal of this case.

### 2.    *Dr. Phillips*

Dr. Phillips wrote a letter in August 2008 opining that the injuries Mr. Rogal sustained

from his 2002 motor vehicle accident will plague him for the rest of his life and make working

extremely difficult if not impossible.  Dr. Phillips stated Mr. Rogal was diagnosed with lumbar

facet disease, which limits his range of motion and prevents him from lifting no more than 10

pounds.  Dr. Phillips also stated Mr. Rogal has severe back spasms that require him to be

transported to the emergency room via ambulance for treatment, and that if he does not receive

REPORT AND RECOMMENDATION - 8

treatment within 20 minutes, he has difficulty breathing in addition to severe pain.  Dr. Phillips reported a diagnosis of chronic fatigue syndrome, which caused Mr. Rogal to be unable to be on his feet for more than 10 minutes and which left him unable to walk or to think clearly when he had a chronic fatigue syndrome episode.  Dr. Phillips noted that a diagnosis of Addison's disease was questionable, but Mr. Rogal had responded well to treatment for the disease.  And Dr. Phillips noted that Mr. Rogal had urinary control issues resulting from his injuries and cannot be more than a few minutes away from a restroom.  Dr. Phillips asserted that these and other injuries, each directly resulting from the 2002 accident, are the reason why Mr. Rogal has been unable to work since 2006.  Tr. 651.

The ALJ gave this opinion very little weight.  First, the ALJ found that Dr. Philips failed to explain why Mr. Rogal was able to work after the accident if his injuries had directly resulted from the accident; Mr. Rogal worked at substantial gainful activity levels in 2007 and 2008, making Dr. Phillips's statement that he was unable to work after 2006 inaccurate; and Dr. Phillips did not state that Mr. Rogal's injuries had progressed and rendered him unable to work by the alleged disability onset date.  Tr. 27.  An ALJ may give less weight to an opinion that is inconsistent with other evidence in the record.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  Dr. Phillip's opinion that Mr. Rogal was unable to work after 2006 was inconsistent with the fact that Mr. Rogal's injuries occurred four years before that date yet he continued to work, he worked for two years after that date, and there was no evidence that his injuries had progressed.  This was a specific and legitimate reason to reject the opinion.

And second, the ALJ found that, during the relevant period, there was no evidence of Mr. Rogal being rushed to the emergency room with muscle spasms and very little mention of ongoing urological problems; Dr. Phillips's statement that Addison's disease responded well to

1    treatment shows that it was not severe; and Mr. Rogal admitted he could stand for more than 10

2    minutes.  Tr. 27.  The ALJ concluded that these examples show that Dr. Phillips's view of Mr.

3    Rogal's functioning did not match his actual functioning during the relevant period.  Tr. 27-28.

4    Again, these inconsistencies with the other evidence in the record undermine Dr. Phillips's

5    opinion.  This was also a specific and legitimate reason for rejecting the opinion.

6            Mr. Rogal asserts that the ALJ ignored the fact that Mr. Rogal worked after 2006 despite

7    Dr. Phillips's advice that he not work.  Dkt. 14 at 8.  But that fact merely underscores the conflict

8    between Dr. Phillips's opinion and the evidence.  Mr. Rogal argues that, while Dr. Phillips did

9    not opine that Mr. Rogal's injuries had progressed since his accident, Mr. Rogal's testimony is

10   consistent with such a finding.  Dkt. 14 at 8.  While that may be true, he merely offers an

11   alternative interpretation of the evidence, one the ALJ was not required to accept.  Mr. Rogal

12   argues that the fact that Dr. Phillips discussed problems that existed before the alleged onset date

13   is not a reason to reject the entire opinion.  Dkt. 14 at 8.  But the ALJ could validly consider the

14   fact that Mr. Rogal's condition was no longer consistent with Dr. Phillips's opinion.  And Mr.

15   Rogal asserts that his testimony that he could stand for 15 to 20 minutes is not a legitimate

16   reason to reject Dr. Phillips's opinion that he could stand for 10 minutes.  Dkt. 14 at 9.  While

17   this difference is small, when combined with the other inconsistencies in Dr. Phillips's opinion,

18   the Court cannot say the ALJ erred in considering it.  None of Mr. Rogal's assertions cures the

19   inconsistencies in Dr. Phillips's opinion.  At best, Mr. Rogal merely proposes a more favorable

20   interpretation of the opinion.  But where the ALJ's interpretation is rational, the Court must

21   uphold it.  *Thomas*, 278 F.3d at 954.  The ALJ did not err in evaluating Dr. Phillips's opinion.

22           *3.    Dr. Minteer*

23           Dr. Minteer began treating Mr. Rogal on September 8, 2008.  He took an "extensive

1    medical history" and performed a "brief" examination.  Dr. Minteer noted that Mr. Rogal

2    brought a file of medical records 10 inches thick, and "talks a lot about his injuries and current

3    deficits and his inability to work."  Dr. Minteer wanted another visit "to get a better handle on his

4    situation."  Tr. 468-69.  That same day, Dr. Minteer wrote a letter in which he stated that he

5    concurred with the January 30, 2008 evaluation by Dr. Phillips that there was no change in Mr.

6    Rogal's medical status in the past nine months.  Dr. Minteer stated that a thorough review of Mr.

7    Rogal's extensive medical history shows ongoing back pain, loss of left visual field, chronic

8    fatigue, recurrent migraines, peripheral neuropathy, Addison's disease, and bladder dysfunction

9    with incontinence and urgency.  Dr. Minteer opined that Mr. Rogal was "medically disabled and

10   more likely than not he will not return to the active workforce."  Tr. 478.

11        The ALJ gave this opinion little weight because while Dr. Minteer stated he based his

12   opinion on the medical record, it appears that he based the assessment more on Mr. Rogal's

13   subjective complaints than his actual functioning.  The ALJ also noted that, as with Dr. Phillips,

14   the medical record that Dr. Minteer reportedly relied on largely addressed the period before Mr.

15   Rogal's alleged disability onset date.  And the ALJ also found that Dr. Minteer did not perform a

16   function by function analysis and seemed to conclude that the combination of diagnoses led

17   inevitably to a finding of disability, which is not the standard for Social Security disability

18   determinations.  Tr. 28.

19        Mr. Rogal argues that the "ALJ's accusation that Dr. Minteer is lying about the basis of

20   his opinion" is not supported by the evidence.  Dkt. 14 at 10.  The ALJ did not state that Dr.

21   Minteer was lying.  Rather, the ALJ relied on the fact that Dr. Minteer spent much of his visit

22   with Mr. Rogal discussing his subjective complaints and was able to perform only a brief

23   examination, to find that the doctor based his opinion more on Mr. Rogal's complaints than his

1   actual functioning.  An ALJ may give less weight to a medical opinion that is based to a large

2   extent on a claimant's self-reports that the ALJ has properly found not credible.  *Tommasetti v.*

3   *Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  Given the ALJ's credibility finding, discussed

4   below, this was a valid reason for rejecting Dr. Minteer's opinion.

5           Even if this was an improper reason to reject Dr. Minteer's opinion, the ALJ gave two

6   other, valid reasons.  The ALJ fact that the medical records Dr. Minteer reviewed largely

7   addressed the period before the alleged onset date was a valid reason for giving the opinion little

8   weight, particularly when combined with the fact that Dr. Minteer performed only a single, brief

9   examination before writing the letter and thus did not have an extensive treating relationship on

10   which to base his opinions.  And the fact that Dr. Minteer's opinion was conclusory and opined

11   that Mr. Rogal was disabled based solely on his diagnoses was also a valid reason to give it little

12   weight.  *See Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may reject conclusory

13   opinion); 20 C.F.R. § 1527(e)(1), (3) (statement by a medical source that a claimant is "disabled"

14   or "unable to work" is an opinion on an issue reserved to the Commissioner and not given any

15   special significance).  The ALJ did not err in evaluating Dr. Minteer's opinion.

16           *4.     Dr. Postigo*

17           Dr. Postigo was Mr. Rogal's treating neurologist from 2005 to 2007.  Throughout the

18   course of treatment, Dr. Postigo noted fatigue, migraines, memory problems, back pain, and

19   urinary tract problems.  592-608.  In March 2007, Dr. Postigo performed neurodiagnostic testing

20   on Mr. Rogal's left arm, which found normal motor and sensory conduction velocities and

21   normal EMG examination; Dr. Postigo's exam found no obvious atrophy or significant weakness

22   in the left arm.  Tr. 593-94.  The ALJ did not discuss the medical evidence from Dr. Postigo.

23           Mr. Rogal asserts that even though this evidence pre-dates the alleged onset date, it is

REPORT AND RECOMMENDATION - 12

1    significant because it is consistent with the opinions of Dr. Phillips and Dr. Minteer, and it shows

2    the ALJ erred in finding Mr. Rogal's left arm impairment was not severe.  Dkt. 14 at 12.

3          An ALJ must explain why "significant, probative evidence has been rejected," and must

4    explain why uncontroverted medical evidence is rejected.  *Vincent v. Heckler*, 739 F.2d 1393,

5    1395 (9th Cir. 1984).  However, while the ALJ must "make fairly detailed findings in support of

6    administrative decisions to permit courts to review those decisions intelligently," the ALJ "need

7    not discuss all evidence presented."  *Id.* at 1394-95.  Dr. Postigo's medical records predate the

8    alleged onset date and offer no information not available elsewhere in the record.  And the fact

9    that Dr. Postigo found normal results on testing Mr. Rogal's left arm is consistent with the

10   February 2007 testing the ALJ referenced in finding no medically determinable left arm

11   impairment.  The ALJ did not err by failing to discuss Dr. Postigo's records.

12         **C.     Mr. Rogal's credibility**

13         Mr. Rogal argues that the ALJ improperly found him not fully credible.  The ALJ did not

14   find that Mr. Rogal was malingering. Thus, the ALJ was required to provide clear and

15   convincing reasons to reject his testimony.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir.

16   2001).  An ALJ does this by making specific findings supported by substantial evidence.

17   "General findings are insufficient; rather, the ALJ must identify what testimony is not credible

18   and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834.

19         The ALJ gave several reasons for finding Mr. Rogal not fully credible.  First, the ALJ

20   found that the treatment record did not corroborate the degree of restriction Mr. Rogal alleged.

21   Tr. 23.  Mr. Rogal repeats his arguments regarding the medical evidence discussed above,

22   asserting that the errors he identified above tainted the ALJ's credibility analysis.  Dkt. 14 at 13.

23   But the Court found no error in the ALJ's analysis of the medical evidence.  Mr. Rogal also

REPORT AND RECOMMENDATION - 13

1  argues that it is error for the ALJ to reject a claimant's credibility based solely on a lack of

2  supporting medical evidence.  *Id.* at 14.  Although lack of objective medical evidence cannot be

3  the sole reason an ALJ discounts subjective complaints, it is a relevant factor that the ALJ can

4  consider in his credibility analysis.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  The

5  lack of support from the medical record was a valid reason to discount Mr. Rogal's credibility.

6         Second, the ALJ noted that Mr. Rogal returned to work after his 2002 motor vehicle

7  accident at least by 2003, and worked until the alleged disability onset date in mid 2008.  Tr. 23.

8  Mr. Rogal argues that the fact that he worked before his alleged disability period is not a reason

9  to question his credibility.  Dkt. 14 at 14.  But a claimant's ability to work with limitations that

10  existed before his alleged onset date is a relevant consideration.  *See Bayliss v. Barnhart*, 427

11  F.3d 1211, 1216 (9th Cir. 2005) (ALJ may reject doctor's opinion that claimant cannot work

12  based on limitations that existed during period when claimant worked).

13         And third, the ALJ found that Mr. Rogal's activities reflect a level of functioning that is

14  inconsistent with his claims of disability and show that he is fully capable of performing as set

15  forth in the residual functional capacity finding.  Tr. 26.  The ALJ noted that Mr. Rogal reported

16  no trouble managing his finances, he drove or rode to get places, he shopped in stores or on the

17  computer a few times a week, he paid bills online and used the computer for email, research, and

18  Facebook, he read inspirational books, he visited with a friend every day and went with friends

19  to a restaurant once a month, he talked on the phone regularly with friends and family, he

20  regularly went to the coffee shop down the street, and although he said he had trouble getting

21  along with others because they did not understand his pain, he got along fine with authority

22  figures.  Tr. 26.

23         An ALJ may consider a claimant's daily activities when evaluating his credibility.  *Light*,

REPORT AND RECOMMENDATION - 14

119 F.3d 789, 792 (9th Cir. 1997).  The ALJ may not penalize a claimant for attempting to live a normal life in the face of his limitations.  *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987).  But contradictions between a claimant's reported activities and his asserted limitations are an issue of credibility.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  In addition, daily activities that are transferrable to a work setting may be grounds for an adverse credibility finding.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Mr. Rogal argues that his daily activities are consistent with his testimony, they are not transferrable to a work setting, and the ALJ did not make specific findings explaining how Mr. Rogal's daily activities would be transferrable to work skills.  Dkt. 14 at 16.  Mr. Rogal's assertion that his daily activities do not contradict his testimony is nothing more than an alternative interpretation of the evidence.  Because the ALJ's interpretation is rational, the Court must uphold it.  And although Mr. Rogal asserts that his daily activities are not transferrable to a work setting, the ALJ did not rely on such a finding in evaluating Mr. Rogal's credibility.  The contradiction between Mr. Rogal's claimed limitations and his daily activities was a valid reason to discount his credibility.

Because the ALJ gave specific, clear and convincing reasons for finding Mr. Rogal not fully credible, the Court finds no error in the ALJ's credibility assessment.

### D.     Lay witness evidence

Mr. Rogal argues that the ALJ erred in evaluating the lay witness evidence from his mother, Sharry Graham, and his friend, Frederick Brown.  The ALJ must consider lay witness testimony unless the ALJ expressly determines to disregard such testimony and gives specific reasons germane to each witness for doing so.  *See Stout*, 454 F.3d at 1053; *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

REPORT AND RECOMMENDATION - 15

1    In June 2010, Ms. Graham completed a questionnaire in which she stated that Mr. Rogal

2    experienced back spasms that can be seen through his clothing, he drops items, limps

3    sporadically, and he can be overtaken by waves of fatigue and also bouts of wakefulness.  She

4    has seen his fingers be very stiff, he cannot sit or stand for any length of time, and he spends

5    most of his time in a recliner.  He has a great deal of trouble getting along with family,

6    coworkers, and friends because he has isolated himself.  His memory is "not terrific," he does

7    not finish tasks, looses focus, and stops one thing and starts on another.  He was never flexible

8    with changes.  He was unable to work after his move to Washington because of his pain.  He

9    needs access to a bathroom at a moment's notice and requires extended time in the bathroom due

10   to his urethral injuries.  Tr. 229-34.

11   In June 2010, Mr. Brown completed a questionnaire in which he stated that he had known

12   Mr. Rogal for two years and saw him every day.  Mr. Rogal was unable to sit in one spot for

13   more than 30 minutes and unable to stand for more than 15 to 25 minutes.  Mr. Rogal needs help

14   with virtually all household tasks.  Mr. Rogal often forgets plans he has made with Mr. Brown.

15   Mr. Rogal also tends to stay at home and not go places or do things.  Tr. 220-28.  In July 2010,

16   Mr. Brown wrote a letter describing an incident that occurred in May 2010, in which Mr. Rogal

17   sent a text message requesting Mr. Brown to come to his house.  When Mr. Brown arrived, he

18   was unable to rouse Mr. Rogal.  When Mr. Rogal finally awoke, he explained that he was aware

19   of everything Mr. Brown did, but was unable to get his body to respond.  Mr. Rogal declined Mr.

20   Brown's suggestion to go to the emergency room.  Tr. 237.

21   The ALJ found that these statements were not supported by the medical evidence.  The

22   ALJ noted as an example that the May 2010 incident was not documented in the medical record

23   and concluded that if it had been as severe as described, Mr. Rogal would have sought treatment

REPORT AND RECOMMENDATION - 16

1    for the problem.  The ALJ also noted that Mr. Rogal did not mention urinary problems at the

2    hearing, except in the context of medication side effects, which did not include urinary urgency

3    or the need to have quick access to a restroom.  The ALJ thus found that the witnesses based

4    their statements on Mr. Rogal's representations of his functioning, which are not consistent with

5    the medical evidence.  The ALJ gave the statements little weight.  Tr. 29.

6          An ALJ may not reject lay witness evidence as unsupported by the medical evidence.

7    *See Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009).  But an ALJ may discount lay

8    testimony that conflicts with medical evidence.  *Lewis*, 236 F.3d at 511.  Thus, to the extent the

9    ALJ was noting conflicts with the medical evidence, as with Ms. Graham's statements about Mr.

10   Rogal's urinary problems, this was a valid reason for giving the statements little weight.

11         Moreover, where an ALJ has provided clear and convincing reasons for finding a

12   claimant not fully credible, and where the lay witness evidence is similar to the claimant's

13   complaints, the ALJ has provided germane reasons for rejecting the lay witness testimony.  *See*

14   *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).  Ms. Graham's and

15   Mr. Brown's statements described limitations similar to Mr. Rogal's own statements of his

16   symptoms.  Thus, the fact that they were based on Mr. Rogal's unreliable self-reports was a valid

17   reason to give them little weight.

18         To the extent the ALJ erred by rejecting the lay witness statements because they were

19   unsupported by the medical evidence, this error was harmless.  The ALJ gave other, valid

20   reasons for rejecting the statements.  The error was thus nonprejudicial or irrelevant to the ALJ's

21   ultimate decision.  *See Stout*, 454 F.3d at 1055.  The ALJ's assessment of the lay witness

22   evidence should be upheld.

23

REPORT AND RECOMMENDATION - 17

**E.      The ALJ's residual functional capacity assessment and finding of non-disability**

Mr. Rogal argues that the ALJ erred in assessing his residual functional capacity, finding him not disabled at step four, and finding him not disabled in the alternative at step five because she failed to include all the limitations opined by Dr. Dixon, Dr. Phillips, Dr. Minteer, and Dr. Postigo, as well as the limitations he described in his own testimony.  Dkt. 14 at 21-23.  Because the Court found no reason to disturb the ALJ's assessment of this evidence, Mr. Rogal's arguments here fail.

Mr. Rogal also argues that the ALJ erred by failing to include all the limitations opined by state agency reviewing doctor Vincent Gollogly, Ph.D.  Dkt. 14 at 21.  Dr. Gollogly completed a mental residual functional capacity assessment form in December 2008.  He checked boxes indicating that Mr. Rogal would be moderately limited in his ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to chances in the work setting.  Tr. 490-91.  In the narrative portion of the form, Dr. Gollogly opined that Mr. Rogal was able to understand, remember, and perform simple, repetitive tasks in a stable and routine environment, work cooperatively with a supervisor, coworkers, and the public, interact well socially, travel, take precautions, and make plans.  Tr. 492.  He believed Mr. Rogal's allegations of disability due to mental impairment were partially credible, but he retains the capacity to perform full time

productive work without interruption from psychiatric symptoms within the limitations he

opined.  *Id.*  The ALJ found that her assessment was consistent with Dr. Gollogly's opinion and

gave the opinion significant weight.  Tr. 27.

Mr. Rogal argues that the ALJ failed to include in her residual functional capacity

assessment the check-box limitations and limitation to simple, repetitive tasks opined by Dr.

Gollogly.  Dkt. 14 at 22.  While the ALJ did not list each and every finding form the check-box

portion of the form, the ALJ's residual functional capacity finding is consistent with the

limitations Dr. Gollogly opined in the narrative section, with one exception.  This exception was

the ALJ's finding that Mr. Rogal could perform some complex work, which the ALJ based on

Mr. Rogal's testimony that he spends at least one hour each day on the computer doing research,

e-mail, games, bill-paying, and Facebook.  Tr. 26.  To the extent Dr. Gollogly's check-box

opinions contradicted his narrative assessment, this was a conflict in the evidence that the ALJ

was entitled to resolve.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Similarly, the

ALJ was entitled to resolve the contradiction between Dr. Gollogly's opinion about Mr. Rogal's

ability to perform complex tasks and Mr. Rogal's own reports about his activities.  The Court

declines to disturb the ALJ's assessment of Dr. Gollogly's opinion.

The Court concludes that the ALJ did not err in assessing Mr. Rogal's residual functional

capacity, in finding him able to perform his past work, or in finding in the alternative that he

could perform other jobs.

### F.     Appeals Council evidence

Finally, Mr. Rogal argues that the Commissioner erred by failing to remand the case for a

new hearing based on the new evidence he submitted to the Appeals Council.  Dkt. 14 at 23.

This new evidence consists of a letter Dr. Phillips wrote on January 30, 2008, in which he

summarized his knowledge of Mr. Rogal's treatment history since his June 2002 accident.  Tr. 696.  The Appeals Council considered the letter, but found that it was similar to Dr. Phillips's July 2008 opinion, which was adequately addressed in the ALJ's decision.  The Appeals Council found that the decision was supported by substantial evidence.  Tr. 2.

When the Appeals Council considers additional material as part of its review of the ALJ's decision and concludes that the new material does not provide a basis for changing the hearing decision, the new material and the Appeals Council's ruling are subject to this Court's review. *Ramirez v. Shalala*, 8 f.3d 1449, 1451-52 (9th Cir. 1993).

The Appeals Council's ruling that the new evidence is similar to Dr. Phillips's other opinions is supported by substantial evidence.  Dr. Phillips's January 2008 letter, which predates Mr. Rogal's alleged onset date by several months, contains largely the same opinions as his August 2008 letter.  As the Court found no error in the ALJ's assessment of that letter, the Court sees no reason to disturb the ALJ's decision based on an earlier letter containing largely the same information.  The Appeals Council did not err by rejecting the opinions contained in Dr. Phillips's January 2008 letter or by finding that the letter did call into question the validity of the ALJ's decision.

### IV.    CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED** with prejudice.

A proposed order accompanies this Report and Recommendation.  Objections, if any, to this Report and Recommendation must be filed and served no later than **December 21, 2012.**  If no objections are filed, the matter will be ready for the Court's consideration on **December 28, 2012**.  If objections are filed, any response is due within 14 days after being served with the

REPORT AND RECOMMENDATION - 20

1   objections.  A party filing an objection must note the matter for the Court's consideration 14

2   days from the date the objection is filed and served.  Objections and responses shall not exceed

3   twelve pages.  The failure to timely object may affect the right to appeal.

4         DATED this 7th day of December, 2012.

5

6                                          _____
                                           BRIAN A. TSUCHIDA
7                                          United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION - 21